UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| ANDREW PATTON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:19-CV-441-TAV-HBG |
| ANDERSON COUNTY, TN and SOUTHERN HEALTH PARTNERS, | ) ) ) ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION**

Anderson County, Tennessee ("the County") and Southern Health Partners ("SHP") have each filed motions for summary judgment in this pro se prisoner's civil rights action for violation of 42 U.S.C. § 1983 [Docs. 60 and 62]. Plaintiff failed to file a timely response in opposition to the motions, thereby waiving opposition to the relief sought by Defendants. E.D. Tenn. L.R. 7.1; E.D. Tenn. L.R. 7.2. Upon consideration of the parties' pleadings, the summary judgment evidence, and the applicable law, the Court finds that summary judgment should be **GRANTED** in favor of Defendants, and this action should be **DISMISSED**.

## I. PLAINTIFF'S ALLEGATIONS

While housed at the Anderson County Detention Facility ("ACDF"), Plaintiff was evaluated by a dentist and advised that he needed ten teeth extracted from his top jaw [Doc. 33 p. 6]. On July 31, 2019, the ten teeth were removed from his top jaw, and during a follow-up on August 31, 2019, the dentist extracted eleven teeth from Plaintiff's lower jaw [*Id.*].

On September 27, 2019, Plaintiff filed medical request #2559110, advising staff that he had lost weight because it was difficult to eat with so many teeth extracted and requesting to be fitted for dentures [*Id.*]. In response, Deputy Allen advised Plaintiff that dentures were not fitted at ACDF [*Id.* at 6-7]. On the same date, Plaintiff filed medical request #2559115, asking what steps needed to be taken to be tested for Hepatitis C [*Id.* at 7]. In response to that request, Plaintiff was advised that inmates were not tested for Hepatitis C absent "confirmed exposure or symptoms" [*Id.*].

On September 28, 2019, Plaintiff filed grievance #343894, wherein he complained of the denial of dentures and treatment for Hepatitis C at ACDF [*Id.*]. In response, Deputy Allen advised Plaintiff that teeth were "not a medical necessity," and that she had "provided [Plaintiff] with how to get dentures and [had] provided a family member with the same instructions" [*Id.*]. She further advised Plaintiff that he would not be tested for Hepatitis C absent confirmed exposure or symptoms [*Id.*]. Plaintiff appealed, complaining of the weight loss he had suffered as a result of the alleged denial of his right to medical care while housed at ACDF [*Id.* at 8]. The response "from administration" stated that Plaintiff had not placed a sick call regarding weight loss as a result of not being able to eat properly, and Plaintiff was advised to place a sick call so that he could be evaluated if that was the case [*Id.*].

Plaintiff again filed a grievance on October 15, 2019, regarding the denial of dentures at ACDF [*Id.* at 8-9]. Plaintiff was again advised by a lieutenant that the County did not have a duty to provide him dentures [*Id.*]. Plaintiff filed yet another grievance

2

concerning the denial of dentures the following day, and a captain at ACDF responded that "it has been found that [Plaintiff] pushed this grievance in an attempt to have jail administrators send [him] to prison[.] [T]he evidence will be saved" [*Id.*].

Thereafter, Plaintiff filed the instant lawsuit requesting the Court award him monetary damages and order medical and dental treatment for inmates at ACDF [*Id.* at 3].

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material" if resolving that fact in favor of one party "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322; *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 249. If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," then there is a genuine dispute as to a material fact. *Anderson*, 477 U.S. at 248. If no proof

3

is presented, however, the Court does not presume that the nonmovant "could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 889 (1990)).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan*, 497 U.S. at 888, or by a mere "scintilla" of evidence, *Anderson*, 477 U.S. at 252. It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan*, 497 U.S. at 888. Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586. (emphasis added). "[D]etermining whether a complaint states a plausible claim for relief. . . [is] context-specific[,] . . . requir[ing] the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009) (discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## III. SUMMARY JUDGMENT EVIDENCE

Plaintiff was arrested and booked into the Anderson County Detention Facility ("ACDF") on November 26, 2018 [Doc. 60-1 ¶ 6]. As part of his initial intake, Plaintiff was medically evaluated [*Id.* at ¶ 7]. Plaintiff's answers to the questions asked in his medical evaluation, as well as a physical assessment, were documented in an Inmate Medical Form, which Plaintiff signed upon intake [*Id.* at 13]. During this intake, Plaintiff did not disclose any dental issues or dietary restrictions other than dairy and eggs [*Id.* at 13, 14-15]. Plaintiff's weight at the time of intake was 190 pounds [*Id.* at 15].

Between November 2018 and July 2019, Plaintiff did not complain of dental issues [*Id.* at ¶ 9]. However, on July 26, 2019, Plaintiff was evaluated by the dentist, Dr. Dana Rust, who pulled approximately ten of Plaintiff's teeth [*Id.* at 16]. Dr. Rust ordered that

5

Plaintiff receive Ibuprofen 600 mg and Tylenol 500 mg for any subsequent pain [*Id.*]. It was also ordered that Plaintiff be placed on a soft diet and that he receive another dental visit the following month [*Id.*]. ACDF records show that Plaintiff received the ordered medication starting July 26, 2019, and that he received it through the end of the month [*Id.* at 17].

Plaintiff visited the dentist again on August 30, 2019 [Doc. 60-1 ¶ 12; Doc. 62-1 ¶ 4]. During this visit, Plaintiff had approximately twelve teeth pulled [Doc. 60-1 p. 18]. Ibuprofen 600 mg and Tylenol 1000 mg were prescribed for any subsequent pain [*Id.*]. Records demonstrate that Plaintiff received the ordered medication beginning on August 30, 2019 and received it through September 4, 2019 [*Id.* at 19-20].

Plaintiff filed no complaints regarding the extractions on July 26, 2019 or August 30, 2019 [Doc. 60-1 ¶ 15]. However, on September 27, 2019, Plaintiff submitted a medical request acknowledging dental care at ACDF and requesting to be fit for dentures [Doc. 60-1 ¶ 16, p. 21; Doc. 62-1 ¶ 7]. Plaintiff did not mention experiencing any weight loss, but did comment that it was "nearly impossible to eat properly without adequate teeth" [Doc. 60-1 p. 21]. In response, Plaintiff was informed that ACDF does not fit inmates for dentures at the facility[1] [*Id.*]. The County provided Plaintiff and a member of his family with instructions on how to proceed with getting dentures if Plaintiff elected to do so while incarcerated [Doc. 60-1 ¶ 17]. None of Plaintiff's dental service records contain any notes

---

[1] ACDF Jail and Detention Policy and Procedure states that "Dental services include evaluation, treatment of infections and extractions" [Doc. 60-1 p. 22-23].

6

Case 3:19-cv-00441-TAV-HBG   Document 70   Filed 04/19/21   Page 6 of 17   PageID #: 386

or orders that Dr. Rust though it medically necessary that Plaintiff receive dentures [*Id*. at ¶ 14, p. 16, 18].

On September 28, 2019, Plaintiff filed an inmate grievance in which he complained that he had "been denied proper medical care" at ACDF [Doc. 60-1 ¶ 18, p. 24]. As a basis for his grievance, Plaintiff stated that his denial of care related to not being fitted for dentures that he believed he would receive at another State-run facility [*Id*.]. ACDF Officer Amber Allen responded the same day by stating that teeth are not a medical necessity, and she reaffirmed that Plaintiff had been informed as how to properly acquire dentures and had been in agreement with that procedure [*Id*. at ¶ 19, p. 24]. On September 30, 2019, Plaintiff appealed this grievance and response thereto, in which he finally stated that, "As of recently I am losing weight due to the fact I cannot properly chew" [*Id*. at 24, 26]. The medical staff at ACDF responded on October 1, 2019, stating:

> You have never once placed a sick call stating you felt you were losing weight or having issues because of not having teeth. The proper protocol even per that case is to place a sick call so you can be properly evaluated and so it can be decided by the proper medical staff what is needed and how to properly care for you. All you ever stated is that you would like them. We do not provide your wants, we provide for your needs.

[*Id*. at 25, 26].

Plaintiff again appealed this grievance on October 15, 2019, and he mentioned for the first time that "bloody gums, stomach cramps, and digestive issues can all be directly linked to [his] current issue" [*Id*. at ¶ 22, p. 26]. However, Plaintiff had never filed a sick call requesting any treatment related to such symptoms prior to this second appeal

7

[Doc. 60-1 ¶ 23]. Lieutenant Jason Maples responded to the appeal on October 16, 2019, stating that the "county is under no duty to provide prosthetic devices such as eyeglasses or dentures" [Doc. 60-1 p. 26]. On the same day, Plaintiff appealed for a third time, stating that "I am not trying to cause a rukus I simply need dentures to eat properly. Or to be housed in a facility that can better meet my needs" [*Id.* at 27]. In response, Plaintiff had a conversation with Captain Shain Vowell, where it was determined that Plaintiff filed and was persistently appealing this grievance "in an attempt to 'push' jail administration to send him to prison" [Doc. 60-1 ¶ 26, p. 27]. Plaintiff filed another grievance on November 5, 2019, stating that he was attempting to appeal Captain Vowell's decision to Chief Richard Parker; however, Sergeant Jeff Smith responded that after Plaintiff's conversation with Captain Vowell, this grievance was closed and resolved [*Id.* at ¶¶ 27-28, p. 27].[2]

On November 13, 2019, while Plaintiff was still attempting to appeal his denture grievance, Plaintiff filed a medical request questioning why he had been switched back to a soft diet [Doc. 60-1 ¶ 30, p. 54; Doc. 60-2 ¶ 8].[3] In response, Plaintiff was informed that it had been ordered that Plaintiff be on a soft diet [Doc. 60-1 p. 54]. However, months later, Plaintiff grieved about the accommodation, stating on February 24, 2020 at 8:57 a.m.

---

[2] During this time, Plaintiff was ordering junk food from commissary, which is contrary to the notion that he could not chew [*See* Doc. 60-1 ¶ 29, p. 28-53] (noting Plaintiff's frequent purchases of, among other things, Cheez-Its, jalapeno poppers, cookies, honeybuns, Jolly Ranchers, and peanuts).

[3] Plaintiff also grieved that he was not allowed milk [Doc. 60-1 p. 55-56]. However, during intake, Plaintiff stated that he was allergic to milk [*Id.* at 14].

that "I would like to be taken off my soft diet. I never requested this diet." [Doc. 60-1 p. 55]. Five minutes later, at 9:02 a.m., Plaintiff grieved, "I would like to know why as of 2/23/20 breakfast time my soft diet was changed?" [*Id.* at 56]. Based on this request, Plaintiff's soft diet was immediately discontinued [*Id.*].

Plaintiff underwent a medical screening on April 1, 2020, after complaining of weight loss, gas, and diarrhea [Doc. 60-1 ¶ 34]. During this evaluation, Plaintiff was again asked a series of questions and given a physical assessment [*Id.*]. At the time of the assessment, Plaintiff weighed 178.8 pounds [*Id.* at 57].

Plaintiff filed a medical request on April 10, 2020, wherein he stated his goal was to "make the medical staff aware of my concern of my continued weight loss and other symptoms of not having my teeth [to] eat properly . . . bloody stool, b[l]eeding gums, stomach c[r]amps and bloating . . . ALL of which can be directly linked to inadequate ability to chew food properly [*Id.* at 58]. When examined nine days later, Plaintiff complained of weight loss, gas, and diarrhea [*Id.* at 57]. In response to his April 10, 2020, grievance, Plaintiff was informed:

> Sir, if you are having bleeding gums, bloating or blood in your stool please fill out a sick call when this is occurring so that you can be evaluated. If the issue you need to be seen for is bloody stool, please do not flush the toilet so medical can see and then notify the provider.

[*Id.* at 58].

As a result of Plaintiff's April 1, 2020 evaluation and his April 10, 2020 grievance, Plaintiff was placed on weight monitoring for approximately six months — through

9

October 6, 2020 [Doc. 60-1 ¶¶ 38-39, p. 59]. Plaintiff's weight increased over those six months and never reached the point of becoming a medical concern [Doc. 60-1 ¶ 40, p. 59].

During April 2020, Plaintiff was fairly active in his attempt to obtain dentures while housed in ACDF. On April 19, 2020, Plaintiff filed a grievance asking if it would still be possible for him to be fitted for dentures with the COVID-19 pandemic ongoing, assuming that his family made the required funds available [Doc. 60-1 ¶ 41, p. 60]. Officer Allen responded on April 20, 2020, wherein she informed Plaintiff that she would make a transport order for the earliest possible appointment once the shelter in place order was lifted [Doc. 60-1 p. 60]. Plaintiff again inquired on June 15, 2020, as to whether everything was "in order and finalized" for his denture fitting appointment [*Id.*]. Deputy Allen confirmed that she had made Plaintiff an appointment [*Id.*]. Once more, Plaintiff inquired as to the status of his denture fitting appointment on July 3, 2020 [*Id.* at 61]. Further, Plaintiff noted that his previous two appointments had been cancelled and that his family had made the financial arrangements to have the fitting completed [*Id.*]. Officer Allen responded by informing Plaintiff that his appointment had been rescheduled because Plaintiff's family knew the particulars about both appointments, which is not allowed by ACDF policy [*Id.*]. Yet again, on July 28, 2020, Plaintiff inquired as to the status of his dental appointment [*Id.* at 62]. Officer Allen responded again by confirming that Plaintiff had an appointment and that the change in his appointment was, again, due to his family knowing the specifics about his appointment [*Id.*].

On August 3, 2020, Plaintiff was transported to Affordable Dentures in Knoxville, Tennessee, to be fitted for his dentures [Doc. 60-1 ¶ 49, p. 65]. Plaintiff was transported back to Affordable Dentures the following day to retrieve his new dentures [*Id*. at ¶ 50, p. 64]. That same day, Plaintiff filed a grievance relating to receiving his denture adhesive, which was subject to approval [*Id*. at 62]. Plaintiff's adhesive was given to him as soon as it was approved by ACDF [*Id*. at ¶ 51, p. 62]. Plaintiff broke his dentures within the month [*Id.* at ¶ 52, p. 63]. ACDF sent the dentures back to Affordable Dentures to be repaired on Plaintiff's behalf [*Id.*]. Once his dentures were repaired, Plaintiff filed no additional complaints regarding dental care or dentures [*Id*. at ¶ 53].

## IV. DISCUSSION

### A. Dental/Medical Care

The Constitution does not guarantee a prisoner "unqualified access to healthcare." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, the denial of constitutionally adequate medical care violates the Eighth Amendment's prohibition against cruel and unusual punishment, which proscribes acts or omissions that produce an "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). An Eighth Amendment claim for the denial of adequate medical treatment is composed of two parts: (1) an objective component, which requires a plaintiff to show a "sufficiently serious" medical need; and (2) a subjective component, which requires the plaintiff to show the defendants acted with "deliberate indifference" to that need. *Farmer v. Brennan*, 511 U.S. 825, 834, 842 (1994). Negligence is insufficient to establish liability; deliberate

11

indifference requires a mental state amounting to criminal recklessness. *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013) (citing *Farmer*, 511 U.S. at 834, 839-40). Therefore, to establish an officer's liability, a prisoner must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Where medical treatment has been provided, a prisoner's disagreement with the adequacy of care given does not implicate the Constitution. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1996). This is because "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). Rather, to state a constitutional claim, such a prisoner must show that his treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2001); *see also Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843-44 (6th Cir. 2002).

Because of this deference to medical judgments made by trained health care personnel, it is not "unconstitutional for municipalities and their employees to rely on medical judgments made by medical professionals responsible for prisoner care." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) (internal quotation marks and citation omitted).

12

The competent summary judgment evidence establishes that Plaintiff received dental treatment on July 26, 2019 and August 30, 2019, which resulted in multiple extractions. Following those extractions, he made a request for dentures. He did not, however, report any medical issues related to the lack of dentures in his initial requests. After his request for dentures was denied, Plaintiff did claim in subsequent grievances that he was losing weight and having other issues. However, despite being repeatedly told that he had to submit a medical request/sick call to be treated by the medical staff for those issues, he did not submit a sick call until April 10, 2020 – after this Court entered an order allowing this case to proceed [*Compare* Doc. 34 *with* Doc. 60-1 ¶¶ 18-26, 36]. Accordingly, the Court finds that Plaintiff cannot establish that his issues posed a serious medical need where he declined to properly seek treatment for them. Moreover, the undisputed proof establishes that Plaintiff was ordering large amounts of food from commissary and refusing a soft diet, which is inconsistent with Plaintiff's claims that he could not chew [Doc. 60 ¶¶ 29, p. 31-33]. Instead, the proof demonstrates that Plaintiff wanted dentures and wanted the County to pay for them even though the County determined they were not medically necessary.

Additionally, when Plaintiff finally requested assessment in April 2020 due to alleged medical issues caused by the lack of dentures, the weight monitoring demonstrated that he had gained weight since the time of his last physical assessment [Doc. 60-1 ¶¶ 38-40]. Therefore, Plaintiff cannot establish that any delay in providing him dentures resulted in any physical injury to him. *Napier v. Madison Cnty., Ky.*, 238

13

F.3d 739, 742 (6th Cir. 2001) (holding plaintiff must establish through medical evidence that delay in treatment resulted in physical injury).

Accordingly, the Court finds that Plaintiff cannot establish either the subjective or objective components of his Eighth Amendment claim, and this case should be dismissed.

## B. Municipal Liability

Despite Plaintiff's failure to establish an issue of fact that his Eighth Amendment rights were violated, the Court nonetheless considers whether, if such issue of fact were present, Plaintiff has presented any evidence that a policy or custom of Defendants was the moving force behind the alleged denial of care.

Entity liability requires proof of a policy or custom. *See Baynes v. Cleland*, 799 F.3d 600, 620-21 (6th Cir. 2015); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"). Therefore, in order to demonstrate municipal liability against the County, Plaintiff must identify a municipal policy or custom and show that his particular injury was incurred due to the execution of that policy. *See Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and quotation marks omitted). Plaintiff's claim against SHP, a private corporation providing medical care to inmates at the ACDF, is assessed with the same municipal-liability standards. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817-18 (6th Cir. 1994); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (noting plaintiff seeking to impose liability against private

14

company performing traditional state function "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his or her rights).

Therefore, in order to hold either the County or SHP constitutionally liable for failing to Plaintiff with dentures, Plaintiff would have to present evidence establishing that one or both of these entities customarily authorized its staff to refuse dentures to inmates where they had been ordered as a medical necessity. There is no such evidence in this case. To the contrary, the competent summary judgment establishes that dentures would have been provided if Plaintiff was suffering from a serious medical issue due to the lack of dentures [*See, e.g.*, Doc. 62-1 ¶ 10]. Accordingly, Plaintiff's claims against Defendants should be dismissed.

### C. Failure to Prosecute

The Court otherwise finds that Plaintiff failed to file his Pretrial Narrative Statement ("PNS") by the March 30, 2021, deadline set forth in the Scheduling Order [*See* Doc. 45]. Rule 41(b) of the Federal Rules of Civil Procedure gives this Court the authority to dismiss a case for failure of the plaintiff "to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b); *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 362-63 (6th Cir. 1999). The Court examines four factors when considering dismissal under Fed. R. Civ. P. 41(b):

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was

> warned that failure to cooperate could lead to dismissal; and
> (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005).

Plaintiff willfully failed to comply with the Court's order, and his failure to do so has prejudiced Defendants, who have spent significant time and resources defending this action. The Court specifically warned Plaintiff that failure to timely file his PNS "will result in dismissal of Plaintiff's complaint for failure to prosecute and to comply with the orders of this Court" [Doc. 45 ¶¶ 3, 6]. Further, alternative sanctions are not warranted, as Plaintiff failed to follow the Court's clear instructions. "[W]hile *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues, acknowledging their lack of formal training, there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer." *Jourdan v. Jabe,* 951 F.2d 108, 109 (6th Cir. 1991). Nothing about Plaintiff's pro se status prevented him from complying with the Court's order, and Plaintiff's pro se status does not mitigate the balancing of factors under Rule 41(b). Accordingly, this action will alternatively be dismissed for want of prosecution pursuant to Rule 41(b).

## V. CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment [Docs. 60 and 62] will be **GRANTED**, and dismissal is otherwise proper under Rule 41(b) of the Federal Rules of Civil Procedure. This action will be **DISMISSED WITH PREJUDICE**.

The Court hereby **CERTIFIES** that any appeal from this order would not be taken in good faith. Therefore, should Plaintiff file a notice of appeal, this Court will **DENY** Plaintiff leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE